UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS MEDLEY,

    Plaintiff,

v.                                                    Case No: 8:20-cv-207-CEH-AEP

WEAR ME OUT OF TAMPA INC.,

    Defendant.
_____/

**O R D E R**

This cause comes before the Court upon Plaintiff's Amended Motion for Entry of Default Final Judgment (Doc. 22). For the reasons set forth below, the Court will deny the Amended Motion for Entry of Default Final Judgment and dismiss this action, without prejudice, because Medley lacks standing to seek injunctive relief under Title III of the ADA.

### I.   BACKGROUND

Wear Me Out of Tampa Inc. operates Hot Box Body Art Studio, located in Brandon, Florida, and functions as Hot Box Body Art Studio and Hot Box Tattoo. Doc. 1 ¶¶3, 7, 16. Wear Me Out provides tattoo services at that location. *Id.* at ¶4.

Nicholas Medley was diagnosed with Human Immunodeficiency Virus, known as "HIV," in 2010. *Id.* at ¶3. Since then, he has been HIV positive. *Id.*

In June of 2019, Medley attempted to purchase Wear Me Out's tattoo services. *Id.* After he entered Wear Me Out's business to purchase a tattoo, a Wear Me Out

employee gave an intake form to him, which was entitled "Tattoo Consent/Release Form." *Id.* at ¶16; Doc. 1-1 at 1. This form asked Medley to confirm, by signing his initials, that he was not HIV positive. Doc. 1 ¶¶6, 15; Doc. 1-1 at 1. Medley was told that he needed to complete the form in order to receive the tattoo. Doc. 1 ¶17. Wear Me Out's policy of requiring customers to disclose their HIV status prior to receiving a tattoo prevented Medley from receiving a tattoo. *Id.* at ¶3. Medley alleges that he plans to return to Wear Me Out's business within a year or sooner to purchase tattoo services. *Id.* at ¶5.

Medley sues Wear Me Out under the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (Doc. 1). Medley alleges that Wear Me Out violated the ADA "by making service contingent upon [Medley] revealing his HIV status." *Id.* at ¶19. Alleging that he lacks an adequate remedy at law and will continue to suffer irreparable harm, Medley seeks a permanent injunction that enjoins Wears Me Out "from continuing its discriminatory practices." *Id.* at 5. With Wear Me Out in default (Doc. 14), Medley seeks the Court's entry of default judgment (Doc. 22).

## II. LEGAL STANDARD

Under Rule 55(b)(1) of the Federal Rules of Civil Procedure, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R.

2

Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

A defendant who defaults is deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact," *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987), but the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law," *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (internal quotation marks omitted). A court may enter default judgment only when "there is a sufficient basis in the pleadings for the judgment entered." *Id.* (internal quotation marks omitted).

### III.   DISCUSSION

Medley alleges that that Wear Me Out discriminated against him in violation of Title III of the ADA. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

However, the Court must address standing before turning to the merits. *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007) ("Standing . . . 'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'"). Courts may consider standing *sua sponte*. *Id.* Under Article III of the United States Constitution, federal courts have jurisdiction over "Cases" and "Controversies." U.S. Const. art. III,

§ 2 cl. 1. The "[s]tanding doctrine falls within this constitutional requirement." *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021). Three elements determine whether a plaintiff has standing to sue: (1) the plaintiff must have suffered an injury-in-fact; (2) a causal connection must exist between the injury-in-fact and the conduct complained of; and (3) a favorable ruling will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "An injury-in-fact is the invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229 (11th Cir. 2021) (internal quotation marks omitted).

When a plaintiff seeks injunctive relief, the "injury-in-fact" requirement under Article III demands more. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013).  Medley seeks only injunctive relief.[1] Injunctive relief is the only form of relief available to plaintiffs who sue under Title III of the ADA. *Floridian Hotel*, 998 F.3d at 1229 (citing 42 U.S.C. § 12188(a)(1)). In addition to alleging past injury, a plaintiff seeking injunctive relief must allege "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston*, 733 F.3d at 1328–

---

[1] Although irrelevant to this analysis, Medley also requests reasonable attorney's fees, litigation expenses, and costs. Doc. 1 at 5. Under the ADA, "[i]n any action . . . commenced pursuant to this chapter, the court or agency, *in its discretion*, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205 (emphasis added). Medley also cites to 42 U.S.C. § 12117, Doc. 1 ¶34, but that section states that the "powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of [Title 42] shall be the powers, remedies, and procedures this chapter provides to . . . any person alleging discrimination on the basis of disability in violation of any provision of this chapter . . . *concerning employment*," 42 U.S.C. § 12117(a) (emphasis added).

29 (internal quotation marks omitted). Indeed, because injunctions regulate future conduct, a plaintiff has standing to seek injunctive relief only if he alleges "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* at 1329 (internal quotation marks omitted). *See also Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11th Cir. 2017) (citing *Houston* and explaining that, "[i]n the ADA context, [the] standing inquiry has focused on the frequency of the plaintiff's visits to the defendant's business and the definitiveness of the plaintiff's plan to return.").

A court must consider "the totality of all relevant facts" in determining whether a plaintiff faces a "real and immediate threat of future injury." *Houston*, 733 F.3d at 1337 n.6. The Eleventh Circuit has identified four factors relevant to this analysis: "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." *Floridian Hotel*, 998 F.3d at 1233 (internal quotation marks omitted). These factors are guideposts. *Id.* They are not exclusive, nor is a single factor dispositive. *Houston*, 733 F.3d at 1337 n.6.

### A. Proximity of Wear Me Out's Business to Medley's Residence

The standing analysis begins with the first factor, which examines the distance between Wear Me Out's business and Medley's residence. Typically, the analysis for this factor focuses on the number of miles between the plaintiff's residence and the defendant's business. *See, e.g., Houston*, 733 F.3d at 1336 (declining to find that a

distance of 30.5 miles rendered the threat of future injury conjectural where the plaintiff regularly traveled to Miami-Dade County, where the supermarket was located, and expected to be there in the future, even though the supermarket was "not the closest supermarket" to his home); *Floridian Hotel*, 998 F.3d at 1235 n.6 (finding that the plaintiff's 50-to-60-mile proximity to the hotel "neither help[ed] nor hurt[] her"); *Alvey v. Gualtieri*, No. 8:15-cv-1861-VMC-AEP, 2016 WL 6087874, at *4 (M.D. Fla. Oct. 18, 2016) ("Alvey's current residence, in a different county seventy-five miles away from Safe Harbor, reduces the likelihood of a 'real and immediate' threat of future injury"); *Kennedy v. New Smyrna ACD LLC*, No. 6:17-cv-89-PGB-TBS, 2017 WL 6560000, at *3 (M.D. Fla. Dec. 22, 2017) (finding that the first factor weighed in the defendant's favor where the plaintiff resided approximately 240 miles away from the defendant's business).

Here, Medley alleges that he "lives in the near vicinity" of Wear Me Out's business. Doc. 1 ¶4. But this vague allegation prevents the Court from ascertaining the proximity of Wear Me Out's business to Medley's residence. Reasonable minds may differ on whether one location is in the "near vicinity" of another location. An examination of the complaint for other allegations shedding light on Medley's residence, such as an allegation that Medley resides in the same city as Wear Me Out's business, proves unavailing. *See Longhini v. Lakeside Operating P'ship, L.P.*, No. 6:17-cv-1651-GAP-GJK, 2018 WL 4101003, at *3 (M.D. Fla. Aug. 3, 2018) ("Without any allegation from Plaintiff regarding his city of residence, the Court cannot determine his proximity to the [h]otel."), *report and recommendation adopted*, No. 6:17-cv-1561-

6

GAP-GJK, 2018 WL 4092117, at *1 (M.D. Fla. Aug. 28, 2018). Medley's only other allegation about his residency is his allegation that he resides in "the judicial district." Doc. 1 ¶3. However, the Middle District of Florida covers thirty-five counties and stretches from Jacksonville, Florida, to Ft. Myers, Florida. Local R. M.D. Fla. 1.04(a). In the absence of more specific allegations about the proximity of Wear Me Out's business to Medley's residence, the Court cannot weigh this factor in Medley's favor.

### B. Medley's Past Patronage of Wear Me Out's Business

The second factor examines Medley's past patronage of Wear Me Out's business. For this factor, a plaintiff's past patronage of a defendant's business does not weigh in the plaintiff's favor where the plaintiff visited the business only once before filing a lawsuit. *See*, *e.g.*, *Kennedy v. Solano*, 735 F. App'x 653, 655 (11th Cir. 2018) ("Kennedy's past patronage of the Sunset Café does not weigh in her favor because at the time she initiated this action, she had only patronized the café once."); *Longhini v. J.U.T.A., Inc.*, No. 6:17-cv-987-PGB-KRS, 2018 WL 1305909, at *3 (M.D. Fla. Mar. 13, 2018) (finding that the second factor weighed in the defendant's favor because the plaintiff had allegedly visited the property only once before initiating the action); *see also Kennedy v. Beachside Commercial Props., LLC*, 732 F. App'x 817, 821 (11th Cir. 2018) (finding that the plaintiff's single visit to the business did not weigh in her favor and noting that a plaintiff seeking injunctive relief under Title III must have attempted to return or, at a minimum, intended to return in the future).

Here, Medley alleges only that he was a "potential customer" of Wear Me Out's business in June of 2019, when an employee provided the intake form to him. Doc. 1

7

¶¶4, 20. Medley does not allege that he visited the business before June of 2019. Rather, the allegations suggest that his visit to Wear Me Out's business in June of 2019 was his first and only visit before filing this action. As such, this factor weighs against Medley.

### C. Definiteness of Medley's Plan to Return

The third factor examines the definiteness of Medley's plan to return to Wear Me Out's business. Medley must allege more than a "generalized 'someday' wish to return at an unspecified point 'in the near future.'" *J.U.T.A.*, 2018 WL 1305909, at *4 (citing *Lujan*, 504 U.S. at 564). "An intent to return in the future to a place once-visited without an additional connection to the area or reason to visit again does not suffice for standing." *Id.* A

Medley alleges that he "intends to visit the Property within a year or sooner to purchase the services of the tattoo artists." Doc. 1 ¶4. More generally, he also alleges that he "intends to visit the Business and Property in the near future as a customer in order to utilize all of the goods, services, facilities, privileges, advantages, and/or accommodations commonly offered at the Business and Property, but will be unable to fully do so because of his disability and the policy barriers to access . . . ." *Id.* at ¶12.[2]

These allegations extend beyond a generalized "someday" wish to return at an unspecified point in the future, as he alleges that he intends to return to purchase tattoo services within a year or sooner. Although the allegations may not state the most

---

[2] The complaint does not define "Business," but the Court construes this allegation as referring to Wear Me Out's business.

definite plan, the Court will weigh this factor in Medley's favor because he identifies a general timeframe and states that he will return to purchase the services of the business, which serves as the basis for the alleged discrimination here. *Cf. Lakeside Operating P'ship*, 2018 WL 4101003, at *3 (finding the plaintiff's allegation insufficient under the third factor where he alleged only that he intended to return to the hotel within four months); *Brito v. 4018 W. Vine Street LLLP*, No. 6:18-cv-177-CEM-TBS, 2018 WL 3361809, at *1 (M.D. Fla. July 10, 2018) (finding the plaintiff's attempt to establish a definite plan to return insufficient where he stated that he planned to return to the hotel properties and businesses regularly if they became accessible and that he planned on doing so within four months).

### D. Frequency of Medley's Travel Near Wear Me Out's Business

The fourth factor looks to the frequency of Medley's travel near Wear Me Out's business. Frequency of travel near the business supports standing. *See, e.g.*, *Houston*, 733 F.3d at 1336 (holding that the plaintiff did not lack standing where he regularly traveled to Miami-Dade County, where the supermarket was located, and expected to be there in the future); *Gaylor v. N. Springs Assocs., LLLP*, 648 F. App'x 807, 811–12 (11th Cir. 2016) (holding that the plaintiff did not lack standing where the place of public accommodation was located near his lawyers' offices and he drove past it when visiting his lawyers).

Here, Medley does not allege that he travels frequently near Wear Me Out's business. As discussed above, Medley alleges only that he lives in the "near vicinity" of the business and that he intends to visit the business within a year or sooner for

9

tattoo services. But the Court declines to assume, based on the allegations, that Medley travels frequently near Wear Me Out's business. Thus, this factor does not weigh in Medley's favor.

### E. Review of Factors

An analysis of the guiding factors to determine the "totality of all relevant facts" reveals that only one factor weighs in Medley's favor. Although the definiteness-of-return factor weighs in his favor, no single factor is dispositive in determining whether Medley has sufficiently alleged that he faces a "real and immediate threat of future injury." Medley alleges that he intends to return to Wear Me Out's business within a year or sooner to purchase tattoo services, but his allegation that he lives in the "near vicinity" of Wear Me Out's business does not reveal the proximity of Wear Me Out's business to his residence, his allegations suggest that his visit to Wear Me Out's business in June of 2019 was his first and only visit before filing this action, and he does not allege that he travels frequently near Wear Me Out's business. These deficiencies undercut the definiteness of Medley's plan to return to Wear Me Out's business "within a year or sooner." Thus, upon consideration of the "totality of all relevant facts," Medley does not sufficiently allege that he has suffered a "real and immediate threat of future injury." As alleged, Medley lacks standing to seek injunctive relief under Title III of the ADA. Therefore, the Court will deny the Amended Motion for Entry of Default Final Judgment and dismiss this action.

Finally, because standing is jurisdictional, a dismissal for lack of standing carries the same effect as a dismissal for lack of subject-matter jurisdiction. *Stalley ex*

*rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). And a court must enter a dismissal for lack of subject-matter jurisdiction, which is not a judgment on the merits, without prejudice. *Id.* Therefore, the Court's dismissal will be without prejudice.

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Amended Motion for Entry of Default Final Judgment (Doc. 22) is **DENIED**.

2. This action is **DISMISSED**, **without prejudice**, for lack of subject-matter jurisdiction.

3. The Clerk is directed to terminate all pending motions and deadlines and to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on February 16, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any.